[Cite as *State v. Hoover*, 2013-Ohio-4612.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2013-CA-8 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-298 |
| v. | : | |
| | : | |
| CHEVITS W. HOOVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of October, 2013.

. . . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. #0069198, by JENNIFER E. GELLER, Atty. Reg. #0088855, Champaign County Prosecutor's Office, 200 North Main Street
Urbana, Ohio 43078
      Attorneys for Plaintiff-Appellee

DARRELL L. HECKMAN, Atty. Reg. #0002389, Harris, Meyer, Heckman & Denkewalter, LLC, One Monument Square, Suite 200, Urbana, Ohio 43078
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, P.J.

{¶ 1} Defendant-appellant Chevits W. Hoover appeals from his sentence for

Telecommunications Harassment. He contends that the trial court erred by: sentencing him to eleven months in prison; deciding not to recommend shock incarceration, the intensive prison program, or a risk reduction sentence; and imposing a $250 fine.

{¶ 2} We conclude that the trial court was within its discretion when it imposed the eleven-month sentence and $250 fine, and decided not to recommend shock incarceration, the intensive prison program, or a risk reduction sentence. Accordingly, the judgment of the trial court is Affirmed.

## I. Hoover Calls his Victim "To Hear her Voice"

{¶ 3} Hoover had been in a relationship with Angela Partlow for about two years when she broke up with him in 2011. In June of that year, he was convicted of Disorderly Conduct and Telephone Harassment in an incident involving Partlow, then known as Angela Durst.[1] He received community control sanctions for those misdemeanor offenses. One of the conditions was no contact with Partlow or her husband.

{¶ 4} On August 20, 2012, Hoover called Partlow's cell telephone twice. He hung up at the end of the first, two-minute call, and then placed a second, one-minute call. To the investigating police officer, and initially at his sentencing hearing, Hoover claimed that the first call was purely accidental, a result of his switching to a new cell phone, and the second call was to apologize for the first.

{¶ 5} Later during the sentencing hearing, the following colloquy occurred:

THE COURT: This is the problem that the Court has. You're telling me

---

[1] In her victim impact statement, Partlow reports that she married some time after she broke up with Hoover.

that you were with a woman for approximately two years, and it was such an intense relationship that you got engaged to her, and you've never been engaged before. You had difficulty with the break up. So that demonstrates that you must have really cared for her. And you want me to believe that you didn't know whose phone number it was that you were dialing?

DEFENDANT HOOVER: No, I don't want you to believe that. Because you know what, I'll tell you the truth because it is the truth. I called to hear her voice. That's just being honest. I called to hear her voice. And that's being honest. And I knew I screwed up. So I apologized for that. And I was lost in love, you know. I didn't know.

## II. The Course of Proceedings

{¶ 6} Hoover was charged by indictment with two counts of Telecommunications Harassment, with a prior conviction for Telecommunications Harassment, in violation of R.C. 2917.21(A)(5), (C)(2), felonies of the fifth degree. Hoover entered into a plea agreement, whereby he agreed to plead guilty to one count, the State agreed to dismiss the second count, and the State further agreed to recommend community control sanctions at Hoover's sentencing hearing.

{¶ 7} At the sentencing hearing, the trial court heard from Hoover's counsel, the State, which honored its agreement to recommend community control sanctions, and Hoover, himself. The trial court also had the benefit of a pre-sentence investigation report and a victim impact statement, both of which are in our record.

{¶ 8} The trial court sentenced Hoover to eleven months in prison, one month less than the maximum, and fined him $250. Hoover could have been fined $2,500. Finally, the sentencing entry included statements that: (1) "The Court does not recommend the Defendant for placement in a program of shock incarceration under R.C. 5120.031. *R.C. 2929.14(I)(1).*" (Emphasis sic); (2) "The Court does not recommend the Defendant for placement in an intensive program prison under R.C. 5120.032. *R.C. 2929.14(I)(1).*" (Emphasis sic); and (3) "The court does not recommend that the Defendant serve a risk reduction sentence under 5120.036. *R.C. 2929.143(A).*" (Emphasis sic.)

{¶ 9} From his sentence, Hoover appeals.

### III.   The Trial Court Did Not Abuse its Discretion

### in Imposing an Eleven-Month Prison Sentence

{¶ 10} Hoover's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO 11 MONTHS IN PRISON FOR A NONVIOLENT FELONY OF THE FIFTH DEGREE.

{¶ 11} Hoover concedes that because his eleven-month sentence is not unlawful, this assignment of error is governed by the abuse-of-discretion standard of review.

{¶ 12} Hoover first argues that the trial court was in error when it declared in its sentencing entry that as a result of its findings, "it is **required** to impose a prison term on the Defendant * * * ." (Emphasis sic.) The State responds that the trial court was correct in its conclusion that its findings mandated the imposition of a prison sentence, under the version of the sentencing statute in effect at the time of his sentencing, which provided, at R.C.

2929.13(B)(3)(a) as follows:

> If the court makes a finding described in division (B)(2)(a), (b), (c), (d), (e), (f), (g), (h), or (i) of this section and if the court, after considering the factors set forth in section 2929.12 of the Revised Code, finds that a prison term is consistent with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code and finds that the offender is not amenable to an available community control sanction, the court shall impose a prison term upon the offender.

{¶ 13}  In reply, Hoover does not dispute that the trial court made the findings set forth above, but argues that a statutory sentencing scheme involving findings of fact by a trial judge is unconstitutional under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶100. We conclude that *Foster* does not stand for that proposition.  The Supreme Court's opinion in *Foster* refers to certain findings that require a prison sentence.  *Id.* at ¶ 43, fn. 45.  *Foster* was specific in declaring which portions of the Ohio sentencing statutes were unconstitutional, and were therefore severed from the statute; R.C. 2929.13 was not one of those statutory provisions. *Id.* at ¶ 99.  The part of the *Foster* opinion Hoover cites states: "Accordingly, we have concluded that trial courts have full discretion to impose a sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences."  *Id*. at ¶ 100.  R.C. 2929.13(B)(3)(a), effective at the time of Hoover's sentencing, did not restrict the trial court's discretion to impose a sentence within the statutory range, without providing reasons for imposing a more than minimum sentence, six months in this case.   (Hoover's sentence did not involve maximum or consecutive sentences.)

{¶ 14} Finally, *Foster* was predicated upon the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Quoted in *Foster* at ¶ 3.) The statutory provision upon which the trial court relied did not increase the penalty for Hoover's crime beyond the prescribed statutory maximum of twelve months; it merely mandated that the sentence include a prison term within that range.

{¶ 15} Hoover next argues that the trial court erred when it found that his relationship to his victim facilitated the offense. R.C. 2929.12(C). Hoover argues that while his relationship to the victim was the motivation for the offense, it did not facilitate the offense in the sense of making it easier to commit the offense. The trial court did not explain how it came to the conclusion that Hoover's relationship to his victim facilitated the offense, but it is clear from a review of the entire record that Hoover called the victim's cell telephone, and that the victim had not changed her cell telephone number after her relationship with Hoover ended. Therefore, it is reasonable to conclude that Hoover's relationship with the victim facilitated the offense because he knew the victim's telephone number as a result of his relationship with her.

{¶ 16} Hoover then argues that the trial court erred by failing to consider, as an indication "that the offender's conduct is less serious than conduct normally constituting the offense," that he did not cause or expect to cause physical harm to any person or property in committing the offense. R.C. 2929.12(C)(3). It is true that the trial court indicated that there were no factors that it considered under R.C. 2929.12(C) as indicating that Hoover's conduct was less serious. Arguably, this was erroneous, since there is no indication that Hoover caused, or expected to cause, any physical harm to persons or property. We deem the error to be harmless,

however. Had the trial court considered this factor, it would properly have given it negligible weight, since the offense of Telecommunications Harassment, by its nature, is unlikely to cause physical harm to persons or property. Therefore, the presence of this factor would have negligible effect in causing Hoover's offense to be deemed less serious than the conduct normally constituting Telecommunications Harassment.

{¶ 17} Based on the record, we conclude that the circumstances inclining the trial court towards a higher sentence had to do with Hoover's likelihood of re-offending. These circumstances included his significant criminal history, the fact that he was on community control sanctions for having committed the same offense against the same victim when he committed this offense, his initial unwillingness to accept responsibility for his act, characterizing it as accidental, and his ultimate admission that his attraction to the victim – his desire to hear her voice – made it impossible for him to conform his conduct to the criminal code, or to comply with the no-contact order from his prior conviction. Given these circumstances, we find no abuse of discretion on the part of the trial court in imposing an eleven-month prison sentence for the offense.

{¶ 18} Hoover's First Assignment of Error is overruled.

**IV. The Trial Court Did Not Abuse its Discretion in Declining to Recommend Shock Incarceration, the Intensive Program Prison, or a Risk Reduction Sentence**

{¶ 19} Hoover's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN RECOMMENDING APPELLANT NOT BE RECEIVED INTO SHOCK INCARCERATION, INTENSIVE PRISON

PROGRAM OR RISK REDUCTION.

{¶ 20}   With respect to shock incarceration and intensive program prison, a trial court has three options under the statutes.   It may recommend the offender for the program, it may disapprove the offender for the program, or it may make no recommendation.   R.C. 2929.14(I). Arguably, the trial court chose the middle option for both of these programs.   It did not state that it was disapproving Hoover for either program; it merely stated that it "does not recommend" Hoover for each program, respectively.   If a trial court decides to disapprove an offender for one of these programs, we suggest that it use the word "disapprove," as set forth in the statute, to avoid any ambiguity in its decision.

{¶ 21}   Assuming, without deciding, that the trial court effectively disapproved Hoover for each of these programs, we find no abuse of discretion.   Hoover makes no argument in his brief on this point other than the arguments he makes in support of his contention that the trial court abused its discretion in imposing an eleven-month prison term, which we have found unpersuasive in Part III, above.

{¶ 22}   With respect to a risk reduction sentence under R.C. 5120.036, a trial court has just two options.   It may recommend that the offender serve a risk reduction sentence.   R.C. 2929.143(A).   Conversely, of course, it may decide not to recommend a risk reduction sentence, which is what the trial court decided to do in this case.   Again, we find no abuse of discretion in the trial court's decision not to recommend a risk reduction sentence.

{¶ 23}   Hoover's Second Assignment of Error is overruled.


**V.   The Trial Court Did Not Abuse its Discretion by Imposing a $250 Fine**

{¶ 24} Hoover's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED IN IMPOSING A FINE UPON APPELLANT.

{¶ 25} The trial court imposed a $250 fine. It could have imposed a fine of up to $2,500.

{¶ 26} Hoover argues that the imposition of the $250 fine was unreasonable because, although he had a job at the time of his sentencing, as a result of his incarceration he has lost that job. Hoover cites *State v. Collier*, 184 Ohio App.3d 247, 2009-Ohio-4652, 920 N.E.2d 416 (10th Dist.), for the proposition that before imposing a fine, a trial court must consider the offender's present and future ability to pay a fine. *Id.* at ¶ 11. In that case, a defendant who had been found to be indigent was sentenced to fifteen years in prison and fined $20,000 for two counts of Rape. The court of appeals found that the trial court had indicated in its judgment entry that it had considered the defendant's present and future ability to pay the fine. *Id.* at ¶ 12. The court noted that the defendant would be 43 years old upon his release from prison, and that:

While defendant's criminal record and incarceration undoubtedly will hamper his ability to obtain employment upon his release from prison, defendant did not argue in the trial court that he would be unemployable after his release, and no evidence in the record suggests any health problems or disabling mental or physical condition that would prevent him from working after his release. If defendant is unable to pay the $20,000 fine after he has been released from prison, he can seek relief under R.C. 2929.18(G), which provides courts an avenue to relieve an indigent person of his or her obligation to pay a fine after the person has

completed the incarceration period of his or her sentence. *Id.*at ¶ 14.

{¶ 27} Hoover was 35 years old at the time of his sentencing, so he will be released from his eleven-month prison sentence at an earlier age than the defendant in *Collier*. Furthermore, we would expect that a conviction for Telecommunications Harassment would have significantly less impact upon an offender's future employability than the two Rape convictions with which the defendant in *Collier* was saddled. Also, a fine of $250 is a much lighter financial burden than the $20,000 fine imposed on the defendant in *Collier*. And if the burden should be more than Hoover can shoulder upon his release from prison, he can apply for relief under R.C. 2929.18(G).

{¶ 28} The record reflects that the trial court did consider Hoover's present and future ability to pay the $250 fine. In its sentencing entry, the trial court stated: "The Court found from the information presented that the Defendant is not indigent for costs, fine, and restitution[2] purposes and Defendant is employable and in good health. The Defendant is able to pay costs and fine upon release from confinement."

{¶ 29} We conclude that the trial court was within its discretion when it imposed a $250 fine. Hoover's Third Assignment of Error is overruled.

## VI. Conclusion

{¶ 30} All of Hoover's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

---

[2] No restitution was awarded.

DONOVAN, J., concurs.

FROELICH, J., concurring:

{¶ 31}    There is certainly a reasoned argument that eleven months in state prison is not the "minimum sanction" that would have accomplished the goals of punishing the offender and protecting the public without "an unnecessary burden on State or local government resources." R.C. 2929.11(A).   However, the court followed the statues and, with the record before us, did not abuse its discretion.

. . . . . . . . . .


Copies mailed to:

Kevin S. Talebi
Jennifer E. Geller
Darrell L. Heckman
Hon. Nick A. Selvaggio